Salter, next friend, *vs.* Salter *et al.*

1. A court of equity had jurisdiction of the subject-matter of a bill filed by a wife, to set up her equity in property coming to her from her father's estate before it had been reduced to possession by her.

2. Where such a bill was filed by a wife through her next friend, she could defeat any provision for her children by objecting thereto; but in the absence of any such objection, the court would assume that she consented, and would make such provision for the children.

3. The husband was a necessary party to such a bill. He should have been required to come into court and make provision for his wife or a settlement on her; and if a proper settlement were made, the court would accept it and refuse to set up her equity. The bill being filed to prevent his marital rights from attaching, unless he were made a party, the decree could not affect him.

4. Creditors who were made parties to such a bill would be bound by the decree, although the husband was not made a party.

5. An infant judgment creditor of the husband, whose judgment was obtained through a guardian, would not be bound, by the decree rendered because his guardian was a party to the bill individually but not as guardian, the infant himself not being a party.

6. Where a person, as next friend of a married woman, filed a bill to set up her equity in property coming to her from her father's estate, and to prevent the marital rights of her husband from attaching thereto, and was decreed to be a trustee with the title vested in him as trustee for the wife and children, this amounted to an acceptance of the trust by him; and if there was no renunciation of the trust, he continued to be the trustee for the children, and if he failed to act when he should have done so, he is liable to them for his non-action.

7. If a sale of the land were made under the execution in favor of the guardian of the minor creditor of the husband, and the purchasers remained in possession for more than seven years, and if the trustee could have sued and recovered the land (the legal title being in him) and failed to do so, he would have been barred, and the children, who were the beneficiaries of the trust, would likewise have been barred, if nothing else appeared.

8. Fraud which will prevent possession of property from being the foundation of prescription, must be actual or positive fraud, and not constructive or legal fraud. Whether or not there was positive fraud, was a question for the jury.

(a) The trustee under the decree should have been made a party, and the bill should be so amended as to make him such.

November 10, 1887.

Salter, next friend, *vs.* Salter *et al.*

Husband and wife. Parent and child. Parties. Debtor and creditor. Judgments. *Res adjudicata.* Guardian and ward. Trusts and trustees. Prescription. Statute of limitations. Fraud. Before Judge LUMPKIN. Washington superior court. March term, 1887.

B. A. Salter, as next friend of certain minors, children of Mary E. Salter, filed his bill against N. J. Newsome, J. B. Newsome, N. H. Jordan, J. A. Robson, John F. Salter and Reuben Mayo, former sheriff, alleging as follows: In 1853, George Botts died intestate, leaving four minor children. Solomon Newsome was appointed administrator of his estate, and on February 4th, 1856, obtained letters of guardianship of the four minor children. Previously, on January 10th, 1856, the personal property of the estate was divided, by commissioners appointed, into five equal parts, one of which was assigned to Bennet Wamble, who had married intestate's widow. The remaining four parts were assigned to the guardian for the minors, one part each. In the distribution of the real estate, a plantation of 1,275 acres, more or less, fell to Newsome, guardian, to be divided between his wards. He managed and controlled it undivided for the interest of the minors from 1853 to 1868. In October of the latter year, a division in kind took place by order of the ordinary. The plantation was divided into lots, and of these, in the language of the commissioner's report, " lot No. 3, containing 300 acres more or less, was drawn by John F. Salter, for Wm. G. Salter, next friend for Mary E. Salter." Thus this portion of the real estate was not administered, divided or distributed until October, 1868, the portion coming to Mary E. Salter remaining in the estate until that time, and never having been reduced to possession by her or her husband. When so reduced, it was as the separate estate of Mary E. Salter, and not as the property of her husband, John F., whom she had married September 7th, 1864. Soon after their marriage, he expressed to her an intention to call her guardian

to an account, to have the estate divided and her share set off to him, and to sell the same. In consequence of her objection to his reducing it into his possession and selling it, he agreed to exercise no control over it, and that it should remain her separate estate free from his liabilities. He never did reduce it to possession, but always recognized it as her separate property. About September 24th, 1867, said Mary E. (who is the mother of the minors in whose behalf the present bill is filed) filed her bill, by her next friend, William G. Salter, setting up her equity in the plantation; and on April 22nd, 1869, a decree thereon was rendered, setting apart the portion drawn as her share as a provision for the benefit of her and the children, and vesting the title thereto in the next friend as trustee. At that time Bennett Wamble was the guardian of Nathan J. Botts, another of the children of George Botts, having succeeded John F. Salter as such guardian about October 10th, 1868, and was a party defendant to the bill and acknowledged service thereof. John F. Salter was indebted to him both as guardian and individually. He had obtained judgment against John F. about October 21st, 1870, on the bond of John F. as guardian. Shortly thereafter John F., being insolvent, employed J. A. Robson, a practicing lawyer, to file a petition in bankruptcy, Robson advising that a discharge in bankruptcy would relieve him from the judgment just mentioned, and that the decree rendered on the bill would protect the land from the judgment. Robson was well acquainted with the decree and the circumstances under which it was obtained. John F. was subsequently discharged as a bankrupt. Soon afterwards, Robson fraudulently bought up the Wamble judgment for a small amount, and had the execution issued thereon levied on the land so set apart by decree, and caused it to be sold thereunder by Reuben Mayo, then sheriff, in November, 1876. On the day before the sale, Mary E. interposed her claim to the land, which was disregarded by the sheriff on the ground that she had previ-

ously put in a claim thereto and had withdrawn it. On the day of sale, she caused public notice to be given to all persons present, among whom was N. J. Newsome, who afterwards bid off the land for himself and J. B. Newsome, that the land belonged to her and her children by virtue of the decree. N. J. Newsome was well acquainted with all the facts touching her right thereto. About February 1st, 1877, J. B. Newsome sold his half-interest to N. J. Newsome. About November 13th, 1877, N. J. Newsome sold the land to N. H. Jordan, who also was present at the sheriff's sale and heard the notice given of the claim under the decree. Mary E. held possession of the land from the rendition of the decree until the sheriff's sale, more than seven years. About August 1st, 1878, Mary E. filed her bill so set aside the sale and recover the land. Her children were not made parties thereto, and she sought to recover it for herself simply; wherefore the bill was dismissed. She died August 7th, 1884, leaving the present minor complainants. It is charged that the series of transactions by which Robson bought the Wamble judgment and caused the land to be sold, was the result of a combination between him, Mayo, and the Newsomes, to deprive Mary E. and her children of their estate, and this was known to Jordan prior to his purchase. The prayers are, to set aside the purchase of the judgment by Robson and the subsequent sales of the land; for a decree that complainant recover it from Jordan; and for general relief.

By amendment, it is alleged that, by mistake, John F. Salter was not made a party to the bill filed by William G. Salter as next friend for Mary E., but he knew of it and made no objection to the rendition of the decree although present at the time; and that William Salter, although appointed trustee by the decree, never accepted the trust in writing or by parol, and never exercised any of the duties thereof, nor was any other person ever appointed trustee in his stead.

On demurrer the bill was dismissed, and the complainant excepted.

HARRIS & ANDERSON, J. S. HOOK and CLIFFORD ANDERSON, for plaintiff.

EVANS & EVANS, J. A. ROBSON and H. D. D. TWIGGS, for defendants.

BLANDFORD, Justice.

The defendants demurred to the bill in this case, upon the ground that there was no equity in the bill; that the complainants had a full and adequate remedy at law, and that, as appeared from the bill, they were barred by the statute of limitations. The court sustained the demurrer, and dismissed the bill; and this is excepted to and error assigned thereon.

1. There are several questions which arise out of this record. The first question made is, that the court had no jurisdiction of the subject-matter of the bill. The subject-matter of the bill filed by the wife was, to set up her equity to this property coming to her from her father's estate before it had been reduced to possession by her.

While it was formerly a matter of much doubt, yet it is now well-settled that a court of equity, and no other court, has jurisdiction of this subject-matter. It is peculiarly a matter of equity jurisdiction. This is well stated by Mr. Story, in 2 Story's Equity Jurisprudence, §1414. We think, therefore, as to the subject-matter of the bill, that the superior court of Washington county had jurisdiction.

2. The next question is, that there was no jurisdiction in the court to provide for the children of Mary Eliza Salter, they not being parties to this bill. There was no necessity for the children to be made parties to the bill. As soon as the bill is filed by the wife to set up her equity, the rights of the children attach immediately; and the court will make a provision for them, except where the wife dissents or objects thereto. She may defeat any provision for the children by objecting, and if she makes no

objection, the court decrees a provision not only for her, but a provision for the children, upon the assumption that she consents thereto. This doctrine is recognized in 2 Story's Equity Jurisprudence, section 1417; and numerous authorities are cited under that section, to sustain the proposition.

3. The next proposition is, that the husband, not being a party to the bill, the court could not set up the wife's equity. We think the husband was a necessary party to this bill to come into court and make a provision for his wife, or a settlement on her; and if it was a proper settlement, the court would refuse to set up her equity, and would take the settlement. This is a well-recognized principle in equity. He is to be affected by the bill, and is a necessary party; the bill was filed to prevent his marital rights from attaching; and unless he was a party to the bill, that decree could not affect him.

4. The next question is, are the creditors who were made parties to this bill bound by the decree if the husband was not made a party to the bill? We think they were. They were parties to the bill, and were bound by that decree, just so long as it remained unreversed and not set aside in the proper way. All who were parties to the bill were bound by the decree. That is why they are made parties—to bind them.

5. The next question is as to whether this decree would bind the creditor whose guardian was a party to the bill individually, but not as a guardian for the infant creditor, such infant not being a party? We are of the opinion that the infant creditor of John F. Salter, the husband, (Nathan J. Botts, whose guardian, Bennett Wamble, was a party individually to this bill because he was also a creditor of J. F. Salter, the husband,) is not bound by this decree. The guardian was not made a party as guardian. The infant was not made a party to the bill. Under the allegations in this bill, this guardian represented the infant as to the latter's rights against a former guardian;

and judgment was obtained for $5,000 afterwards, on account of the *devastavit* committed by J. F. Salter, the husband, for this infant. We think this infant is not bound by the decree, and therefore, that the judgment in favor of the infant against J. F. Salter is in no way affected by the decree.

6. It is insisted by the plaintiff in error that William G. Salter, who, as the next friend of Mrs. Salter, preferred this bill to set up her equity, and was decreed by the court to be a trustee, with the title vested in him as trustee for the wife and her children, never accepted this trust, and never did any act afterwards showing that he had accepted it. But it is nowhere alleged that he ever renounced the trust. The question is now, did he accept this trust, under the facts alleged in this bill? We are of the opinion that he did. He procured this decree to be made. It was made at his instance; and we think that that fact makes him a trustee; that was an acceptance of the trust by him. And if there was no renunciation of the trust by him, he still continued as trustee for these children; and if he failed to act when he ought to have acted, he is liable to the children for his non-action.

7. So the question arises here, were these children barred when they brought this suit against these purchasers at the sale under the execution in favor of Wamble, the guardian of Nathan J. Botts, the minor. Whether these purchasers got a good title or not, under the facts I have stated, and whether they remained in possession of the land, as shown, at the time they filed this bill, they remained on it over the statutory period. They remained in possession some ten or eleven years. And if this trustee could have sued and recovered this land, the legal title being in him, and failed to sue, he would have been barred from bringing any other action to recover, after the lapse of the statutory period. He could not sue and regain the land if he let the statute bar it. And if he could have sued and recovered it, had he brought his action within the proper

time, we think the children would have been barred of any right themselves to bring their action. But in this case something else appears.

It appears that before this decree was rendered in 1869, setting up the wife's equity, John F. Salter, the husband, in 1868, appeared, at the time this land was divided in kind, and drew his wife's share of the land for her next friend, William G. Salter; and it was so returned to the court of ordinary.

It is further alleged in the bill that this property came from her father's estate; that she had never had possession of it, and neither had her husband; that he recognized this property to be hers, as her separate property; and afterwards, while he was not a party to this bill, the decree was rendered making a provision for the wife and settling upon a trustee for her and her children this property, he consenting thereto, being present and making no objection. He could have made this settlement himself on his wife. He had a right to do it. A court of equity will set up a post-nuptial settlement made by the husband upon the wife, against creditors.

This decree was rendered, putting the title in the trustee for the wife and children. They went into possession of the property under this decree, which we hold to be good color of title; and remained in possession of it for more than seven years before the sale under the execution obtained by Wamble, as guardian of Botts, was ever levied upon this land. They therefore had the title to this land. This was a complete title in them—a title by prescription. They claimed it as their own. The husband recognized it as the separate estate of the wife all the time. And this trustee, if he had brought his action within seven years after this sale occured, against these purchasers, could, under these facts, have unquestionably, in our opinion, recovered possession of the land.

8. There is but one other question to be disposed of. He, having failed to bring his action, is barred; and if he

is barred, the children are barred.  But the bill alleges that these purchasers knew all about this title in the complainants at the time they made the purchase.  The code says that possession of property, to be the foundation of prescription, must not have originated in fraud.  If they knew that this title was not in the defendant in execution, John F. Salter, and that the land was not subject to the execution, but that the title was really in the children, that, in our opinion, would amount to such a fraud as is contemplated by the code.  We think that the fraud mentioned there means positive fraud—actual fraud, not constructive or legal fraud.  It must be such a fraud as affects the conscience.  If they had reason to believe, and did believe, that the property was subject to the execution, although they might have known of the claim set up by the complainants in this bill, then that, in our opinion, would not amount to positive fraud.  It would be merely a constructive fraud.

But this is a question for the jury to determine under the facts of this case.  The jury must determine for themselves whether this was such a fraud as we have stated, *i. e.* a positive fraud.  If they knew that the title was not in the father, but was in the children, and was not subject to the judgment against the father for the debt of the latter, and the jury could say from all the facts and circumstances whether it was a positive fraud, such a fraud as affected their consciences, then they could take nothing by this prescription; and the jury would be authorized to find for the complainant this property sued for in the bill.  We think, therefore, under these facts, as stated, that here was a question for the jury; and the court ought not to have sustained this demurrer and dismissed the bill.

But we find one difficulty here.  This trustee is not a party in this case.  They proceeded upon the assumption that he had never accepted the trust; that he had never done any act as trustee, and therefore was not trustee. We think that he was.  We think, though, and so direct,

that this bill should be amended so as to make the trustee a party complainant thereto; and that the case should go back and be tried on the question as to whether these purchasers, at the time they made the purchase, were, on account of their knowledge, and in view of all the facts and circumstances connected with the transaction, guilty of such a fraud as stated. All this should be left to the jury to determine. So we reverse the decree of the court below dismissing this bill, with the direction stated, viz. that this trustee be made a party.

Judgment reversed.